## MURPHY *vs.* WEEMS.

1. Although a vendor may have sold a horse during the late war between the states, knowing that his vendee would use it in the Confederate service, does it follow that the vendor intended to aid such service, and that the consideration of the sale was illegal?  *Quære.*

(*a.*) The charge of the court below was not such as to injure the plaintiff in error.

2. Though a vendor sold a horse during the war, and the vendee rode it in the Confederate service, yet if, after the close of the war, the parties came together to settle a dispute in regard to the sale, bringing the horse and the note for the purchase money, and a note was given by the vendee to the vendor for the value of the horse as he then stood, such note was not invalid as founded on an illegal consideration.

December 5, 1882.

Contracts. Confederate Government. Charge of Court. Before Judge SIMMONS. Gordon Superior Court. February Term, 1882.

Reported in the decision.

J. A. JERVIS; R. J. McCAMY, for plaintiff in error.

R. B. TRIPPE, for defendant.

JACKSON, Chief Justice.

Weems sued Murphy by attachment on a note made March the 5th, 1867, and payable to Denman, or bearer, for eighty-nine dollars, and due one day after date. Defendant pleaded that the consideration of the note was illegal, in that it was given in renewal of a note for a horse to be ridden by Murphy in the Confederate service and against the United States.

It appears from the evidence that, at the date of the note sued on, Denman and Murphy met, Murphy being in possession of the horse and bringing him to the meeting, and Denman bringing the note for a large sum in Confederate money, which in 1863 had been given for the horse. Two arbitrators agreed on were to meet the two to settle their differences, as to the value of the horse particularly. One arbitrator failed to meet, but the other suggested that the horse as he stood was worth eighty-nine dollars, and both parties agreed to settle at that sum, and Murphy gave the note sued on for the horse and kept him.

1. It is doubtful that the original sale was illegal. A man may sell his horse and know that the buyer will use him to ride in the Confederate service, and yet not intend to aid that service at all, conceding that it was illegal, as now held, to aid it. But on this point the court below charged squarely, that if the purpose of the sale was to have the horse used in the service of the Confederacy, it was illegal. So that the maker of the note and plaintiff in error cannot complain of the charge by the court on this point.

2. But when the note sued on was given, all was peace. No war was raging. The Confederate government was annihilated, and the United States were triumphant. The man who had ridden the horse brought him back in safety. The man who held the note wanted his horse or the money. They could not agree on terms. They met to try to agree by leaving the matter to two friends. There stood the horse. His value then as he stood, after being used in service some four years after the first sale, seems to have been the only question. One of the friends—the other not meeting them—suggested that the horse as he stood,—nothing being charged or exacted for the use of him in the war, and nothing said about the value of the note in Confederate money when reduced to its value in greenbacks, was worth $89.00. Both agreed to it. The one

went off with the note, the consideration of which was the value of a horse as he was in 1867, after the war was over; and the other went off with the horse. It was an honest and just settlement. There is nothing illegal about it. No war of any sort in it. No purpose of the horse being used to battle against anybody or any government. The purchaser of the horse settled a dispute with his neighbor about a trouble between them, rode his horse off, plowed him or drove him peacefully, and now refuses to pay for him. Sound sense, clear reason, good law, all say he must pay the settlement he agreed to and put on paper.

If authority were needed for so clear a proposition, it is to be had in 54 *Ga.*, 344. That was a much stronger case than this. It was the hire of slaves, the sale of wagon and mules, and the loan of money to make guns and shell for the purpose of killing the men in the United States service; and yet a settlement about the transaction after peace was restored, was upheld by this court.

Judgment affirmed.